# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN CAVER, | ) | CASE NO. 1:03CR486 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |
| | ) | |

This matter is before the Court upon Petitioner Calvin Caver's ("Petitioner")
Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody,
pursuant to 28 U.S.C. § 2255. (Dkt. # 513).

## I. FACTUAL BACKGROUND

Petitioner, along with codefendants Tamir Abdullah and Fred Cloud, was charged
by the Grand Jury of the United States District Court for the Northern District of Ohio on
July 20, 2004, in a four-count superseding indictment. (Dkt. # 301). The superseding
indictment charged Petitioner with one count of Conspiracy to Possess with Intent to
Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846,
(Count 1), and two counts of Possession with Intent to Distribute Cocaine Base, in
violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), (Counts 2, 4). (Dkt. # 301). Following
a jury trial, Petitioner was found guilty on all three counts on September 22, 2004. (Dkt.
# 366, 367, 369).

1

On March 2, 2005, the Court sentenced Petitioner to life imprisonment on Count One, ten years imprisonment on Count Two, and ten years imprisonment on Count Four, with the sentences to run concurrently, to be followed by a term of ten years supervised release.  (Dkt. # 442).  Petitioner timely filed a notice of appeal on the same day sentence was imposed.  (Dkt. # 449).

The Sixth Circuit affirmed Petitioner's conviction, along with those of his codefendants, in a mandate issued January 3, 2007.  (Dkt. # 497).  The United States Supreme Court denied Petitioner's petition for a writ of certiorari on May 3, 2007.  (Dkt. # 502).  Petitioner filed the instant petition for federal habeas corpus relief on February 12, 2008.  (Dkt. # 513).  The government has filed a Response in Opposition, (Dkt. # 542), and Petitioner has filed a Brief in Response, (Dkt. # 549).

## II. STANDARD OF REVIEW

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994).  Furthermore, 28 U.S.C. § 2255 requires a district court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief."  Green v. United States, 445 F.2d 847, 848 (6th Cir. 1971); Bryan v. United States, 721 F.2d 572, 577 (6th Cir. 1983).

## III. LAW AND ARGUMENT

### A. Ground One: Prosecutorial Misconduct

In Ground One of the instant petition, Petitioner alleges a claim of prosecutorial misconduct on two separate grounds.  First, Petitioner alleges that his "Constitutional right to a fair trial was denied by the government's misstatement of evidence."  (Dkt. # 513-1 at 4).  Second, Petitioner claims that his "fair trial right was denied by the government's subornation of perjury."  (Dkt. # 513-1 at 6).

When reviewing a claim of prosecutorial misconduct, the Court must first determine whether the statements made by the prosecutor were improper.  United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999).  If the statements appear improper, the Court must then determine whether the statements were flagrant and warrant reversal.  Id. According to the Sixth Circuit, the flagrancy of a particular statement rests on four factors:

> (1) whether the remarks tended to mislead the jury or to prejudice the accused [including whether the trial judge gave an appropriate cautionary instruction to the jury]; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

United States v. Monus, 128 F.3d 376, 394 (6th Cir. 1997) (citing United States v. Cobleigh, 75 F.3d 242, 247 (6th Cir. 1996)).  A non-flagrant improper statement by the prosecutor will support a claim of prosecutorial misconduct only if "(1) the proof of the defendant's guilt is not overwhelming; (2) the defense counsel objected; and (3) the trial court failed to cure the impropriety by failing to admonish the jury."  Francis, 170 F.3d at 550.

3

### 1.    The attorney for the Government did not misstate evidence during opening statements.

Petitioner first alleges that the Government misstated evidence during opening statements.  Specifically, Petitioner asserts that the attorney for the Government made improper and prejudicial remarks during opening statements regarding the recovery of a cellular phone and a business card from Petitioner at the time of his June 17, 2003, arrest. See (Dkt. # 470, Trial Transcript Vol. II at 249).  Petitioner claims that such remarks were improper because neither item of evidence was recorded on the evidence inventory sheet relating to his arrest.  (Dkt. # 513-1 at 4-5).  The Government argues that such statements were not improper because they were based upon testimony elicited at trial. (Dkt. # 542 at 26).

Petitioner's argument is without merit.  A review of the trial transcript reveals that Detective John Pitts of the City of Cleveland Police Department testified that both the cellular phone and business card were recovered from Petitioner at the time of his arrest on June 17, 2003.  (Dkt. # 471, Trial Tr. Vol. III at 523, 544-47).  Moreover, the business card was admitted into evidence as Government Exhibit 3.  (Dkt. # 471, Trial Tr. Vol. III at 546; Dkt. # 475, Trial Tr. Vol. VII at 1608-09).  The remarks made by the attorney for the Government simply laid out the testimony expected, and later elicited, from Detective Pitts.

In his Brief in Response, Petitioner highlights the testimony of Officer Robert Miles of the City of Cleveland Police Department, who testified that a cell phone was not recovered from Petitioner at the time of his June 17, 2003, arrest.  (Dkt. # 471, Trial Tr.

Vol. III at 500).   According to Petitioner, this testimony renders the remarks by the attorney for the Government during the opening statement a misstatement of evidence. As the Court has noted, however, Detective Pitts testified that a cell phone was recovered on June 17, 2003.  The attorney for the Government did not misstate evidence when he told the jury that Detective Pitts would provide such testimony.   Under such circumstances, it is within the province of the jury to weigh the conflicting testimony and to decide disputed issues of fact.  O'Hara v. Brigano, 499 F.3d 492, 500 (6th Cir. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).[1]  Therefore, the remarks made by the attorney for the Government during opening statements regarding the cellular phone and business card were not improper and, thus, do not support a claim of prosecutorial misconduct.

### 2.       *The attorney for the Government did not suborn perjury.*

Petitioner next contends that the Government suborned perjury by allowing Detective Pitts to testify that a cell phone and business card were recovered from Petitioner at the time of his June 17, 2003, arrest.  To succeed on a claim for prosecutorial misconduct based upon subornation of perjury, Petitioner "must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false."  United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989).

Petitioner has failed to show that Detective Pitts' testimony was actually false.  In support of such an argument, Petitioner states:

---

[1]       The Court gave the following instruction to the jury prior to opening statements: "And before you  hear from counsel, I have to give you this instruction.  Of course, as I mentioned earlier, what  counsel   say   to you in their opening statements is not evidence.  They're merely going to outline for you what they believe the evidence will show in this case."  (Dkt. # 470 Trial Tr. Vol. II at 238).

> Movant contends that he did not possess a phone or business card. (see Exhibit B).  According to evidence/incident report sheets for 6:17:2003, no phone or business card were entered in connection with [the June 17, 2003] arrest, and no phone or any recordings were presented to the court.

(Dkt. # 513-1 at 7).  Petitioner's self-serving assertion and reference to his own affidavit (Exhibit B) are not conclusive as to whether he possessed a cellular phone or a business card at the time of his arrest on June 17, 2003.  The record demonstrates that a business card was entered into evidence, (Dkt. # 471, Trial Tr. Vol. III at 546; Dkt. # 475, Trial Tr. Vol. VII at 1608-09), and that Detective Pitts testified that the card was recovered from Petitioner when he was arrested.  (Dkt. # 471, Trial Tr. Vol. III at 523, 544-47).  Detective Pitts further testified that a cellular phone was also recovered.  (Dkt. # 471, Trial Tr. Vol. III at 523, 544-47).  The fact that Officer Miles testified that no cellular phone was recovered does not render Detective Pitts' testimony necessarily false.  As the Court has noted, it is within the province of the jury to weigh the conflicting testimony and decide disputed issues of fact.  "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  Lochmondy, 890 F.2d at 822.  Accordingly, Petitioner has failed to demonstrate that Detective Pitts' testimony regarding the recovery of a business card and cellular phone was actually false for purposes of Petitioner's claim of perjury.

For the foregoing reasons, Court finds that the claims of prosecutorial misconduct presented in Ground One of the instant petition are without merit.

6

**B. Ground Two: Fourth Amendment Violation**

In Ground Two of the instant petition, Petitioner asserts that he "was deprived of his Fourth Amendment right to be free from illegal search and seizure." (Dkt. # 513 at 6). Specifically, Petitioner "challenges the constitutional legality of his [June 17, 2003] arrest." (Dkt. # 513-1 at 9). As Petitioner points out, his defense counsel filed a Motion to Suppress evidence seized pursuant to the arrest. (Dkt. # 220). After a hearing, this Court denied the Motion, finding that officers had at least reasonable suspicion to conduct an investigatory stop of Petitioner's vehicle, and that the plain view exception to the warrant requirement of the Fourth Amendment allowed for the seizure of crack cocaine, which provided probable cause to arrest and search Petitioner. (Dkt. # 265). Petitioner offers no new argument or evidence in support of his Fourth Amendment challenge.

The Court has reviewed its June 9, 2004, Memorandum Opinion and Order denying Petitioner's Motion to Suppress, and finds no reason to revisit its decision. Based upon the facts and circumstances of the June 17, 2003, arrest, there existed at least reasonable suspicion to conduct an investigatory stop. Once officers saw crack cocaine in plain view, as the evidence before the Court suggests, they had probable cause to arrest and search Petitioner. For the reasons set forth in its June 9, 2004, Memorandum Opinion and Order (Dkt. # 265), the Court finds that Petitioner's Fourth Amendment rights were not violated by the arrest and search that occurred on June 17, 2003. Therefore, Petitioner's Fourth Amendment claim under Ground Two of the instant petition is without merit.

### C. Ground Three: Ineffective Assistance of Trial Counsel

In Ground Three of the instant petition, Petitioner asserts five grounds upon which he claims his trial counsel was ineffective.

The Supreme Court, in Strickland v. Washington, 466 U.S. 668 (1984), devised a two-part inquiry for claims of ineffective assistance of counsel.  Under the Strickland test, Petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 688-94.   Thus, Petitioner must demonstrate both deficient performance and prejudice in order to succeed on his claim.  Id. at 686.

### *1.     Defense counsel was not ineffective for failing to present evidence at the suppression hearing.*

Petitioner first argues that trial counsel was ineffective for failing to present evidence at the hearing on the two Motions to Suppress Evidence filed by Petitioner.  See (Dkt. # 120, 220).   Specifically, Petitioner contends that trial counsel failed to call Petitioner to testify "that the drugs had been thrown into his lap" during his arrest on March 18, 2003,[2] and "that [Petitioner] never arrived at any gasstation [sic] and

---

[2]       Petitioner does not specifically state during which arrest drugs were allegedly thrown into his lap. However, he states in footnote 4 of the instant petition that "during opening arguement [sic], [defense counsel] Betras argued information he received from a witness, Darnell Smith, that the 12.04 grams had been thrown into the lap of [Petitioner]."  (Dkt. # 513-1 at 12 n.4).  Though the Court cannot find the specific reference to Darnell Smith during counsel's opening statement, counsel, while speaking about the March 18, 2003, arrest, did state, "And when they pulled my client out of the car, the testimony is going to be that they pulled 12 grams of crack cocaine off of him in that car."  (Dkt. # 470, Trial Tr. Vol. II at   309-10).  Counsel further stated, "They did not see him handling those drugs, and that there were other people in that car and in the car behind them, that when they came up and pulled them out, that the drugs were thrown to my client, and you will hear testimony that he did not have those drugs on him, that    he     was getting a ride, and that's when the police came on them."  (Dkt. # 470, Trial Tr. Vol. II at 310).  From the

conducted a transaction." (Dkt. # 513-1 at 12). Petitioner further argues that counsel was ineffective during the suppression hearing for failing "to inquire into the reliability of the alleged CI and attempt to assertain [sic] the identity of the CI." (Dkt. # 513-1 at 13). Neither argument supports Petitioner's claim.

The mere fact that Petitioner would have given testimony contrary to that provided by the Government's witnesses does not render counsel's decision not to have Petitioner testify deficient, absent a showing that counsel frustrated Petitioner's ultimate decision as to whether to testify. Petitioner has not alleged that counsel denied him the right to testify at the suppression hearing. Moreover, even if defense counsel's decision fell below an objective standard of reasonableness Petitioner has not demonstrated a reasonable probability that but for the decision, the result of the suppression hearing would have been different. There was substantial evidence presented at the hearing from the testimony of Detective Jonathan Schroeder and Detective Joseph Bujnak of the City of Cleveland Police Department vice unit that on March 18, 2003, Petitioner was involved in two drug transactions observed by police. Detective Schroeder testified that he observed Petitioner being picked up in a rented Dodge Intrepid and driven to a gas station in a "high drug area" of Cleveland, where Detective Schroeder observed what he believed to be a hand-to-hand drug transaction between Petitioner and an individual on a bicycle. (Dkt. # 281, Supp. Hrg. Tr. at 13-17).

Detective Schroeder further testified that he and other undercover officers followed the Intrepid from the gas station to a location two to three miles away, where

_____

foregoing, the Court concludes that Petitioner alleges he would have testified that drugs were thrown in his lap during the March 18, 2003, arrest.

the vehicle parked.  (Dkt. # 281, Supp. Hrg. Tr. at 17-19).  Detective Schroeder stated that while en route to the second location, the Intrepid circled the block before parking, which Detective Schroeder testified was consistent with a drug transaction.  (Dkt. # 281, Supp. Hrg. Tr. at 18-19).  According to Detective Schroeder, a second vehicle arrived and parked a short distance behind the Intrepid.  (Dkt. # 281, Supp. Hrg. Tr. at 19-20).  Detective Schroeder, from across the street at a distance of approximately thirty feet, observed an individual exit the second vehicle and enter the rear passenger seat of the Intrepid, at which time Detective Schroeder observed an exchange between the individuals in the front seat and the individual in the rear seat, which Detective Schroeder believed to be a drug transaction.  (Dkt. # 281, Supp. Hrg. Tr. at 20-22).  The individual in the rear seat then exited the Intrepid and returned to the second vehicle.  (Dkt. # 281, Supp. Hrg. Tr. at 22).

Detective Schroeder testified that he then instructed other detectives to initiate an investigatory stop of both vehicles.  (Dkt. # 281, Supp. Hrg. Tr. at 22).  According to Detective Schroeder, approximately three grams of crack cocaine were recovered from the individual in the second vehicle.  (Dkt. # 281, Supp. Hrg. Tr. at 23).

Detective Bujnak testified that he assisted in the investigatory stop of the Dodge Intrepid on March 18, 2003.  (Dkt. # 281, Supp. Hrg. Tr. at 35-40).  According to Detective Bujnak's testimony, he was in a "takedown car," and at some point was instructed by Detective Schroeder to "move in [and] investigate what was going on" regarding the Intrepid.  (Dkt. # 281, Supp. Hrg. Tr. at 35).  As Detective Bujnak approached the passenger side of the vehicle, he shone his flashlight into the vehicle and

observed Petitioner "sitting in the passenger seat holding a bag of crack cocaine on his lap." (Dkt. # 281, Supp. Hrg. Tr. at 36). Detective Bujnak further testified that when he ordered Petitioner out of the car, "[Petitioner] dropped the bag to the ground, put his foot over the bag…[and] tried to drag the bag along with his foot into the sewer." (Dkt. # 281, Supp. Hrg. Tr. at 40). Upon searching Petitioner pursuant to arrest, Detective Bujnak discovered "smaller empty baggies with cocaine residue in his pants pocket." (Dkt. # 281, Supp. Hrg. Tr. at 41). The bag of crack cocaine and the smaller empty baggies were entered into evidence as Government Exhibits 3 and 5, respectively. (Dkt. # 281, Supp. Hrg. Tr. at 38, 41, 74).

Thus, there was substantial evidence from the testimony of both detectives that Petitioner was involved in two suspected drug transactions on March 18, 2003, one of which was observed at a gas station, and that Petitioner was discovered holding a bag of crack cocaine in his lap when officers conducted an investigatory stop of the Intrepid. The fact that Petitioner may have offered a different account of the events on March 18, 2003, or testified that the bag of crack cocaine was thrown into his lap is insufficient to establish prejudice under the Strickland standard. Such testimony would have been self-serving and against the weight of other evidence in the record. Therefore, even if counsel was deficient for failing to have Petitioner testify at the suppression hearing, Petitioner has not established a reasonable probability that, but for such error, the result of the proceedings would have been different.

Petitioner next argues that counsel was ineffective for failing to discover the identity or challenge the reliability of the Government's confidential informant ("CI"),

11

who approached Detective John Pitts with an offer to purchase drugs from Petitioner and who assisted in the drug transaction that led to Petitioner's arrest on June 17, 2003.[3]  The Sixth Circuit has held that "defense counsel's failure to make a particular motion or objection that would succeed, would have no tactical disadvantage, and would either result in an acquittal of the defendant or prevent the proceedings from becoming fundamentally unfair constitutes objectively unreasonable performance."  Badley v. United States, 48 Fed.Appx. 163, 165 (6th Cir. 2002).  Under this standard, Petitioner has not demonstrated that counsel's failure to discover the identity or challenge the reliability of the CI was objectively unreasonable.

First, it is not clear that Petitioner would have been entitled to discover the identity of the CI.  The general rule is that the Government is not required to disclose the identity of an informant.  United States v. Hanna, 341 F.2d 906, 907 (6th Cir. 1965) (citing Scher v. United States, 305 U.S. 251, 254 (1938)).  That rule gives way only where "disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  Id.  In the instant case, the CI's tip was corroborated by a police-monitored controlled drug buy, and the police personally observed Petitioner in possession of drugs prior to arresting him.  (Dkt. # 281, Supp. Hrg. Tr. at 52-58, 65-71); see United States v. Coffee, 434 F.3d 887, 892-95 (6th Cir. 2006).

During the suppression hearing, defense counsel extensively cross-examined Detective Pitts and Detective Miles regarding the June 17, 2003, arrest of Petitioner, in an attempt to cast doubt upon such corroboration.  (Dkt. # 281, Supp. Hrg. Tr. at 58-62, 71-

---

[3]  The CI was not involved in the investigation or arrest of Petitioner on March 18, 2003.

73).   Despite counsel's efforts, the Court found that, based upon the totality of the circumstances of the controlled buy, probable cause existed for an investigatory stop of Petitioner's vehicle.  (Dkt. # 265 at 6).  The Court therefore determined that Detective Miles was lawfully positioned when he observed the suspected crack cocaine in plain view in Petitioner's hand, and that the seizure of the crack cocaine was thus proper.  (Dkt. # 265 at 7-10).

Therefore, because the disclosure of the CI's identity would not have been helpful to Petitioner's defense, nor essential to a fair determination of the merits of Petitioner's Motion to Suppress, the general rule against disclosure would have applied.  Petitioner has, therefore, not demonstrated that counsel's failure to seek disclosure of the CI's identity was objectively unreasonable under Strickland.

Similarly, counsel's failure to challenge the reliability of the CI was not objectively unreasonable.  Faced with the testimony of Detectives Pitts and Miles regarding the controlled buy, it was at least a reasonable tactical decision for counsel to focus on casting doubt upon the detectives' accounts rather than attacking the credibility of the CI's tip.  That is, the testimony of the detectives was determinative of the issue of probable cause.  The independent reliability of the tip that prompted the controlled buy was of far less importance.  See Coffee, 434 F.3d at 892-95; United States v. Hawkins, 278 Fed.Appx. 629, 634-35 (6th Cir. 2008).

In any event, because the information provided by the CI was corroborated by a police-monitored controlled buy, Petitioner has failed to demonstrate prejudice under Strickland due to counsel's failure to discover the identity or challenge the credibility of

13

the CI.  Specifically, he has failed to demonstrate a reasonable probability that but for counsel's actions, the outcome of the suppression hearing would have been different.

As Petitioner has shown neither deficient performance nor prejudice, his claim for ineffective assistance of counsel under Ground Three with regard to the suppression hearing is without merit.

### 2. Defense counsel was not ineffective for failing to object to the admission of prejudicial evidence.

Petitioner asserts that defense counsel was ineffective for failing to object to the admission into evidence of a business card, a cellular telephone, and several letters written by Petitioner.

### a. Business card

Petitioner argues that counsel was deficient in failing to object to the admission of a business card allegedly seized during his June 17, 2003, arrest, asserting that the business card was not listed on the evidence report related to the arrest.  According to Petitioner, the admission of the business card "allowed for the jury to infer [that] because [Petitioner] made cards to distribute his cellphone cellphone [sic] number, he gave his number, as alleged, to alleged coconspirators."[4]  (Dkt. # 513-1 at 15).  Petitioner argues that defense counsel, therefore, "had an obligation to object to its admission."  (Dkt. # 513-1 at 15).

---

[4]    Petitioner also argues that "because count 2 involved an alleged sale of drugs, the jury was free to infer that because lottery tickets were found, surely [Petitioner] must be guilty of both crimes."  It is unclear from the instant petition or from Petitioner's Memorandum in Support how the lottery tickets, which are listed on the evidence report related to the June 17, 2003, arrest, relate to Petitioner's claim for ineffective assistance of counsel.

14

As the Court has discussed, *supra*, with respect to Ground One, the business card was properly admitted as Government Exhibit 3, based upon the testimony of Detective Pitts.  (Dkt. # 471, Trial Tr. Vol. III at 546; Dkt. # 475, Trial Tr. Vol. VII at 1608-09).  Counsel's objection would have been meritless, and would not likely have prevented the admission of the business card into evidence.  An attorney is not required to make meritless objections to avoid a claim of ineffective assistance.  Krist v. Foltz, 804 F.2d 944, 947 (6th Cir. 1986).  Moreover, counsel did object generally to the admission of Government Exhibits 1 through 9, which included the business card.  (Dkt. # 475, Trial Tr. Vol. VII at 1608-09).  Therefore, Petitioner's claim for ineffective assistance of counsel fails with respect to counsel's failure to object to the admission of the business card into evidence.

### b. Cellular phone

Petitioner next argues that defense counsel was ineffective for failing to object to the admission into evidence of a cellular phone allegedly seized from Petitioner at the time of his arrest on June 17, 2003.  (Dkt. # 513-1 at 15-16).  According to Petitioner, references to the phone during the Government's opening argument, during the direct examinations of Detective Pitts, Detective Miles, and Detective Schroeder, and during the Government's closing arguments created a "presumption that the jurors believed that…[Petitioner] did, in fact possess a cellphone. [sic]"  (Dkt. # 513-1 at 15).  Petitioner further asserts that he "**was not** found in possession of a cellular phone on 6:17:2003 and it's [sic] admission was prejudicial."  (Dkt. # 513-1 at 16) (emphasis in original).

To the extent that Petitioner argues that counsel was ineffective for failing to object to the admission into evidence of a cellular phone allegedly seized at the time of his June 17, 2003, arrest, the claim fails because no such phone was admitted into evidence.  A review of the record demonstrates that, while counsel for the Government mentioned such a phone during opening statements and elicited testimony from Detective Pitts regarding the seizure of the phone, the Government did not offer into evidence any phone seized on June 17, 2003.[5]  Therefore, as counsel could not have objected to an exhibit that was never offered into evidence, his failure to do so did not fall below an objective standard of reasonableness.  Petitioner's claim for ineffective assistance thus fails on this ground.

In his Brief in Response, Petitioner appears to argue that counsel was ineffective for failing to object to any testimony or argument making reference to a cellular phone that was allegedly seized on June 17, 2003.  (Dkt. # 549 at 9-10).  Specifically, Petitioner asserts that defense counsel's "arguement [sic] in closing [did not sway] [sic] the jury from believing that Caver did, in fact, possess a cellphone, [sic] given the Government's elicitation of testimony relative to the phone all throughout this trial."  (Dkt. # 549 at 9).

Petitioner's claim fails on this ground as well.  First, as the Court noted, *supra*, under Ground One, there was conflicting testimony from Detective Pitts and Detective Miles regarding whether a cellular phone was recovered from Petitioner on June 17, 2003.  (Dkt. # 471, Trial Tr. Vol. III at 500, 544-47).  It was for the jury to decide,

---

[5]   In fact, as Petitioner notes, defense counsel highlighted during closing arguments the Government's failure to produce the phone allegedly seized during the June 17, 2003, arrest.  (Dkt. # 475, Trial Tr. Vol. VII at 1713).

16

therefore, which version of events to believe.  O'Hara, 499 F.3d at 500.  The mere fact that the Government did not offer such a phone as an exhibit does not render all references or testimony regarding it improper, absent a showing that such references were in bad faith or such testimony constitutes perjury.  Put simply, it is the task of the jury to weigh the testimony of Detective Pitts and Detective Miles, along with the Government's failure to produce the particular cell phone, and determine the facts.  Therefore, an objection by counsel to any reference to the cell phone would have been meritless and would not likely have been sustained.

Additionally, the mere fact that defense counsel's "arguement [sic] in closing [did not sway] [sic] the jury from believing that Caver did, in fact, possess a cellphone, [sic]," does not subject counsel to a claim for ineffective assistance.  In light of the conflicting testimony regarding the phone, defense counsel acted reasonably during closing argument in highlighting the Government's failure to produce the phone as an exhibit.  Such conduct did not bring counsel's representation below an objective standard of reasonableness under Strickland.

### c. Letters

Finally, Petitioner asserts that defense counsel was ineffective for failing to object to the admission of several letters written by Petitioner to codefendants.[6]  According to Petitioner, "the letters were damaging and their probative value was low," and therefore, "[c]ounsel had a duty to object to their admission."  (Dkt. # 513-1 at 18).  The Government contends that the letters were properly admitted as evidence of

---

[6]  The letters written by Petitioner were admitted as Government Exhibits 41, 42, 46, 47, 48, 50, and 51.

consciousness of guilt, association with coconspirators, and continued participation in a widespread drug conspiracy.  (Dkt. # 542 at 40).  Thus, according to the Government, Petitioner has failed to show prejudice resulting from counsel's failure to object.

On direct appeal, the Sixth Circuit affirmed this Court's admission of the letters, concluding that the potential prejudicial effect of the letters did not outweigh their probative value.  See United States v. Caver, 470 F.3d 220, 240-41 (6th Cir. 2006).  Petitioner has provided no basis for this Court to find differently on the issue of the admissibility of the letters written by Petitioner.  Accordingly, Petitioner has failed to show that, had counsel objected, the Court would have determined that the letters were inadmissible.  Absent such a showing, Petitioner has failed to demonstrate prejudice under Strickland.

Therefore, Petitioner's claim for ineffective assistance of counsel fails with respect to counsel's failure to object to the admission of the letters into evidence.

### 3. Defense counsel was not ineffective in failing to inform Petitioner of his right to testify at trial.

Petitioner next asserts that counsel was ineffective for failing to inform him of his constitutional right to testify.  Specifically, Petitioner "contends that counsel did not allow him to take the stand in his defense, despite his unequivical [sic] desire to do so." (Dkt. # 513-1 at 18).  Petitioner further states that "although he was aware of the general constitutional right to testify at trial, he was not aware that only the defendant can waive this right or that he could have overruled defense counsel's decision and that defense

18

counselcontributed [sic] to this lack of understanding," by allegedly refusing to allow Petitioner to testify.  (Dkt. # 513-1 at 20).[7]

A defendant's right to testify at trial is a fundamental constitutional right, and is subject only to a knowing and voluntary waiver by the defendant.  United States v. Webber, 208 F.3d 545, 550 (6th Cir. 2000).  The role of defense counsel is to advise a defendant as to whether to testify, but the ultimate decision lies with the defendant.  Id. at 551.  When a decision is made not to have the defendant testify, however, "the defendant's assent is presumed."  Id.  The "defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'"  Id. (quoting Strickland, 466 U.S. at 688-90).

A defendant who seeks to testify despite counsel's advice to the contrary may exercise his right "by insisting on testifying, communicating with the trial court, or discharging counsel."  Id.  When a non-testifying defendant makes no indication to the court of a disagreement with counsel as to whether to testify, waiver of the right may be presumed.  Id.

---

[7]     Along with his petition, Petitioner has included an affidavit from his sister, Andrea Caver.  (Dkt. # 513-4 at 8-9).  The affidavit purports to provide information supporting Petitioner's claim of ineffective assistance of counsel based upon counsel's denial of Petitioner's right to testify.  The affidavit, however, does not indicate that the affiant has personal knowledge of discussions and correspondence between counsel and Petitioner with respect to the issue of Petitioner's testimony.  Therefore, the Court will not consider the affidavit of Andrea Caver.

19

Petitioner states that at some point before the conclusion of the trial, he expressed to counsel his "unequivical [sic] desire" to testify, and that he was aware of his right to testify at trial, though not of his unique ability to waive that right.  Petitioner further points to a July 7, 2004, letter he sent to the Court in which he cites several points of disagreement with his attorney but does not in any way suggest that there is a disagreement on the issue of whether Petitioner will testify.  (Dkt. # 298).  Under the circumstances, the Court finds it suspect that, knowing he had a right to testify, Petitioner made no attempt to communicate to the Court counsel's denial of that right, particularly in light of his attempts to bring several other counsel-related issues to the Court's attention.

Even if counsel did fail to advise Petitioner properly regarding his right to testify, however, Petitioner has not shown that he was prejudiced by counsel's conduct. Specifically, under Strickland, Petitioner must show a reasonable probability that the outcome of his trial would have been different had counsel advised him that only he could waive his right to testify.  Strickland, 446 U.S. at 688-94.  Petitioner's assertion that his testimony could have explained the testimony of other unspecified witnesses "or atleast [sic] contradicted the testimony of the witnesses," and his unsubstantiated ascription of greater weight to his own potential testimony than that of other witnesses are insufficient to demonstrate the prejudice required under Strickland.

Therefore, Petitioner's claim for ineffective assistance of counsel fails with respect to counsel's failure to advise Petitioner of his right to testify.

20

### 4.    *Defense counsel was not ineffective for failing to move for severance of counts.*

Petitioner asserts that defense counsel "refused to request Severance [sic] of counts," and that "this failure allowed inadmissable [sic] and prejudicial evidence of one offense to be used in another."  (Dkt. # 513-1 at 24).  Specifically, Petitioner seems to allege that the joinder of counts in his criminal trial caused the jury to confuse the evidence against Petitioner with evidence related to counts in which Petitioner was not charged.

As Respondent notes, defense counsel, at the request of Petitioner, filed a Motion to Sever Defendants on June 29, 2004.  (Dkt. # 282).  The Motion was based upon arguments similar to the ones Petitioner sets forth in the instant petition.  The Court denied the Motion, finding that "the evidence that is likely to be presented in this case is not so complex that the jury would be unable to make individual determinations as to the guilt of each defendant," and that "a properly instructed jury is presumed to be able to distinguish among defendants and charges."  (Dkt. # 297 at 2-3).

Based on the Court's ruling on the Motion to Sever Defendants, it was not unreasonable for defense counsel to recognize that a Motion to Sever Counts would likely have been futile.  The Court, in its rationale for denying the Motion to Sever Defendants, had essentially foreclosed the possibility that a Motion to Sever Counts would be granted.  Thus, under Strickland, it was not objectively unreasonable for counsel to decide against filing a Motion to Sever Counts.

Even if counsel's performance in not filing the Motion was objectively unreasonable, however, Petitioner has failed to show that he was prejudiced by counsel's conduct.  As the Court has noted, there was little likelihood, based upon the Court's ruling on the Motion to Sever Defendants, that a Motion to Sever Counts would have been granted.  Petitioner has offered no evidence or argument to demonstrate that the results of the proceedings would have been different if counsel had filed such a motion. Therefore, Petitioner has failed to satisfy the prejudice prong of the <u>Strickland</u> analysis.

Therefore, Petitioner's claim for ineffective assistance of counsel fails with respect to counsel's failure to seek severance of counts.

### 5. *Defense counsel did not fail to protect Petitioner's right to confront his accusers.*

Petitioner next alleges that "his right to confrontation was violated when trial counsel permitted [Detective] Pitts to testify about information allegedly received from a CI." (Dkt. # 513-1 at 25).  Specifically, Petitioner asserts that the Government elicited testimony from Detective Pitts regarding statements of a CI as to Petitioner's involvement in drug dealing activity which was the focus of a police investigation. Petitioner claims that counsel's failure to object when such statements were offered by Detective Pitts constitutes ineffective assistance.

The petition lists the following instances of testimony given by Detective Pitts to which Petitioner argues counsel should have objected:

1. That the CI identified Petitioner from a photograph.

2. That the CI offered information about dealings with Petitioner prior to June 17, 2003.

3. That the CI described Petitioner's vehicle.

4. That the CI arranged a drug transaction with Petitioner.

5. That the CI observed Petitioner's June 17, 2003, arrest.

(Dkt. # 513-1 at 26).

The Court need not reach the question of whether counsel's failure to object to the alleged hearsay was objectively unreasonable because Petitioner has failed to demonstrate the prejudice required to succeed on a claim of ineffective assistance of counsel. Under Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Petitioner has not made such a showing.

Petitioner relies on the Sixth Circuit's holding in United States v. Cromer, 389 F.3d 670 (6th Cir. 2004), for the proposition that statements of a confidential informant are testimonial and, therefore, such statements may not be offered at trial unless an accused has an opportunity to cross-examine the informant. The inadmissible statements in Cromer, however, were those whose only purpose was to establish that the person the informant identified was involved in the crime charged in the indictment. Id. at 676. That is, the statements deemed inadmissible by the court were intended to identify the defendant as the guilty party. The Cromer Court held that other police testimony regarding information gained from an informant was not hearsay because "the testimony

23

was provided merely by way of background," and was "offered merely to explain why a government investigation was undertaken," rather than for the truth of the matter asserted. Id.; see also United States v. Evans, 883 F.2d 496, 501 (6th Cir. 1989) (background information is admissible to "construct the sequence of events leading up to the drug transaction"); United States v. Martin, 897 F.2d 1368, 1371 (6th Cir. 1990) ("In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay.").

The same is true in the instant matter. The information which Detective Pitts testified he obtained from the CI, and to which Petitioner claims counsel should have objected, was offered to explain why police initiated a controlled buy from Petitioner. It was, therefore, not inadmissible hearsay, and Petitioner was not prejudiced by counsel's failure to object to the testimony.

Furthermore, the evidence against Petitioner on the charged offenses was distinct from the CI information described by Detective Pitts. The June 17, 2003, arrest of Petitioner occurred during a controlled drug purchase set up through a police-monitored phone call, during which an individual agreed to meet the CI at a specified location and sell him fifty dollars worth of crack cocaine. (Dkt. # 471, Trial Tr. Vol. III at 540-41). Detective Pitts testified that he monitored the phone call and that he heard the individual agree to sell the crack to the CI and direct the CI to meet him at a specific address. (Dkt. # 471, Trial Tr. Vol. III at 541). According to testimony given at trial, police observed Petitioner arrive at the specified location shortly after the phone call was made. (Dkt. #

24

471, Trial Tr. Vol. III at 479-82, 543-44).  When police approached Petitioner's vehicle at the location, Officer Miles observed Petitioner holding a bag of crack cocaine and "counting rocks of cocaine."  (Dkt. # 471, Trial Tr. Vol. III at 481-82).

Thus, as in <u>Martin</u>, "[t]he prosecution was not trying to use the [CI]'s information due to a lack of evidence on the substantive charges. The prosecution had other, more probative, evidence of [the offense charged]." <u>Id</u>. at 1371.  Conversely, the Court in <u>Cromer</u> found that the Government's lack of evidence apart from the informant's statements was a contributing factor to the inadmissibility of certain police testimony:

> The central issue at Cromer's trial was not whether illegal activity occurred at the Buchanan residence, but whether Cromer knowingly participated in that illegal activity.  The evidence on this point was so tenuous that the jury in Cromer's first trial was unable to convict him.  Because there was no dispute as to the subjects of the government's investigation or the reason those subjects were believed to be involved, evidence that the government focused its investigation on [Cromer] is helpful to the jury only insofar as it relates to the difficult question of whether Cromer was involved in the illegal activity.

<u>Id</u>. at 677.  The instant case is distinguishable.  The information obtained from the CI and used to set up the controlled buy is different from the evidence of Petitioner's guilt on the offense charged in Count 20 of the Indictment.  The evidence on the substantive charge was obtained through the personal observation by police of Petitioner in possession of crack cocaine on June 17, 2003.

For the foregoing reasons, Petitioner has failed to show that he was prejudiced by counsel's failure to object to the testimony of Detective Pitts regarding information obtained from a CI.  Under <u>Strickland</u>, therefore, Petitioner's claim for ineffective assistance of counsel on such grounds fails.

25

**D. Ground Four: Ineffective Assistance of Appellate Counsel**

In Ground Four of the instant petition, Petitioner asserts two grounds upon which he claims his appellate counsel was ineffective. Claims of ineffective assistance of appellate counsel are governed by the Strickland analysis. Haliym v. Mitchell, 492 F.3d 680, 694 (6th Cir. 2007).

### 1. Appellate counsel did not fail to adequately brief Petitioner's appeal.

Petitioner first contends that appellate counsel's "brief was excessively vague, ambiguous, and failed entirely to meet the requirements necessary in that counsel neglected to adequately brief [Petitioner]'s appeal." (Dkt. # 513-1 at 27). In support of his claim, Petitioner details five areas of the brief that he alleges were deficient: "Insufficient Evidence Arguement [sic]," "Variance Arguement [sic]," "Severance Arguement [sic]," "Hearsay Arguement [sic]," and "Letters Arguement [sic]."

A review of the brief filed in the Sixth Circuit by appellate counsel on Petitioner's behalf demonstrates that counsel's representation did not fall below an objective standard of reasonableness. Counsel provided a correct and adequate summary of the law regarding each of the above issues, supported by citations to Sixth Circuit decisions on those issues. Counsel then applied the applicable law to the facts of the instant case, arguing that the alleged errors in the district court required reversal of Petitioner's conviction. Accordingly, Petitioner has failed to demonstrate that appellate counsel's representation was constitutionally inadequate under Strickland.

Even if Petitioner has satisfied the first prong of the Strickland analysis, however, he has failed to show that he was prejudiced by counsel's allegedly inadequate brief on

26

any of the above issues. The Sixth Circuit fully examined Petitioner's claims and concluded in each instance that Petitioner's arguments did not warrant reversal of his conviction. United States v. Caver, 470 F.3d 220, 235 (6th Cir. 2006). Nothing in the Court's opinion indicates that Petitioner was prejudiced by any failure on the part of appellate counsel.

Therefore, Petitioner's claim for ineffective assistance of appellate counsel based upon counsel's failure to adequately brief certain issues on appeal is without merit.

### 2. Appellate counsel was not ineffective in failing to argue to the Supreme Court that Petitioner's pro se Supplemental Brief was not addressed.

Petitioner next argues that appellate counsel failed to argue before the Supreme Court of the United States that the Sixth Circuit neglected to address Petitioner's *pro se* Supplemental Brief. While appellate counsel's failure to raise a particular claim can amount to ineffective assistance, counsel need not raise every conceivable issue. McFarland v. Yukins, 356 F.3d 688, 710 (6th Cir. 2004) (internal citations omitted). "[T]he decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." Id. Furthermore, counsel's performance is "strongly presumed to be effective." Strickland, 466 U.S. at 690.

The Sixth Circuit has identified the following "considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently." Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir. 1999).

(1)     Were the omitted issues "significant and obvious"?
(2)     Was there arguably contrary authority on the omitted issues?
(3)     Were the omitted issues clearly stronger than those presented?

    (4)     Were the omitted issues objected to at trial?

    (5)     Were the trial court's rulings subject to deference on appeal?

    (6)     Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

    (7)     What was appellate counsel's level of experience and expertise?

    (8)     Did the petitioner and appellate counsel meet and go over possible issues?

    (9)     Is there evidence that counsel reviewed all the facts?

    (10)   Were the omitted issues dealt with in other assignments of error?

    (11)   Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id.

Petitioner has failed to demonstrate that counsel was ineffective for failing to raise the supplemental brief issue before the Supreme Court. Specifically, the minimal facts alleged by Petitioner on this ground prevent the Court from undertaking an informed analysis of the Mapes considerations. Petitioner does not identify the claims he attempted to raise by the Supplemental Brief, precluding the Court from determining whether counsel's failure was objectively unreasonable or whether Petitioner was prejudiced by the failure. Petitioner's conclusory assertion that "his issues had merit and were preserved for appellate review" is insufficient to show deficient performance or prejudice. (Dkt. # 513-1 at 32).

Therefore, Petitioner's claim for ineffective assistance of appellate counsel based upon counsel's failure to argue before the Supreme Court that the Sixth Circuit failed to address Petitioner's *pro se* Supplemental Brief is without merit.

**E. Petitioner's Motion to Amend or Supplement Petition or, in the Alternative, to Incorporate <u>Brady v. Maryland</u> Argument of Codefendant Fred Cloud**

On October 2, 2008, after briefing on the instant petition was complete, Petitioner filed a "Motion to Amend or to Supplement His § 2255 Motion or In the Alternative to Incorporate Brady Arguement [sic] in Codefendant, Fred Cloud's § 2255 Motion."  (Dkt. # 565).  Specifically, Petitioner states that "in pursuit of preservation of the Court's time and to limit excessive delay of a disposition in this matter, Caver submits that the arguement [sic] of codefendant, fred [sic] Cloud, may better assist the Court in deciding the case and issues presented."[8]  (Dkt. # 565 at ¶ 4).

The Court hereby **GRANTS** Petitioner's Motion in the Alternative.  The argument made by codefendant Fred Cloud pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), shall be incorporated into the instant petition.  <u>See</u> (Dkt. # 505 at Ground One).

The Supreme Court's holding in <u>Brady</u> "obligates the government to turn over evidence that is both favorable to the accused and material to guilt or punishment." <u>Owens v. Guida</u>, 549 F.3d 399, 415 (6th Cir. 2008).  A violation of the <u>Brady</u> requirement has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

---

[8]     Petitioner Fred Cloud alleges in his § 2255 petition that "The U.S. Attorney for the Northern District of Ohio had actual and/or constructive knowledge of significant prior misconduct by DEA SA Lee Lucas, who spearheaded the investigation and prosecution under this indictment, but failed to disclose that information to the defendants."  (Dkt. # 505 at Ground One).

Petitioner's <u>Brady</u> claim fails on the prejudice component. "Prejudice in the <u>Brady</u> sense means the same as in the <u>Strickland</u> sense: a reasonable probability that there would have been a different result had the evidence been disclosed." <u>Owens</u>, 549 F.3d at 415 (citing <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995)). A review of the testimony given at trial by Drug Enforcement Administration Special Agent Lee Lucas ("Agent Lucas"), whose credibility forms the basis for the instant <u>Brady</u> claim, demonstrates that the testimony given by Agent Lucas against Petitioner was minimal in both scope and prejudice. (Dkt. # 474, Trial Tr. Vol. VI at 1457-81; Dkt. # 475, Trial Tr. Vol. VII at 1486-1607).

With respect to Petitioner, Agent Lucas provided the following testimony on direct examination:

1.  That Petitioner was present in the courtroom, seated at the defense table. (Dkt. # 475, Trial Tr. Vol. VII at 1486-87).

2.  That, given his experience, it was Agent Lucas' opinion that the amount of crack cocaine contained in Government's Exhibits 1 and 2 (identified elsewhere at trial as drugs seized during the two arrests of Petitioner) was more consistent with distribution than personal use.[9] (Dkt. # 475, Trial Tr. Vol. VII at 1506-08).

3.  That Government's Exhibit 46 was a letter from Petitioner to codefendant Ralph Jones. (Dkt. # 475, Trial Tr. Vol. VII at 1513).

---

[9] The Government did not use Agent Lucas to connect the drugs contained in Government Exhibits 1 and 2 to Petitioner. Agent Lucas' testimony was limited to a physical examination of Exhibits 1 and 2.

4.   That Darnell Smith was the individual that was identified in the vehicle with Petitioner on the night of March 18, 2003.  (Dkt. # 475, Trial Tr. Vol. VII at 1514).

On cross-examination by Petitioner's counsel, Agent Lucas gave the following testimony with respect to Petitioner:

1.   That as part of the investigation, law enforcement had obtained Petitioner's name, address, LEADS information, and other personal information.  (Dkt. # 475, Trial Tr. Vol. VII at 1560-61).

2.   That between January 1, 2002, and August 10, 2002, it would have been impossible for Petitioner to have been selling drugs, but not impossible for Petitioner to have participated in the charged conspiracy.  (Dkt. # 475, Trial Tr. Vol. VII at 1561).

3.   That between January 1, 2002, and August 10, 2002, there was no evidence of any letters written by Petitioner in relation to the conspiracy.  (Dkt. # 475, Trial Tr. Vol. VII at 1562).

4.   That between January 1, 2002, and August 10, 2002, there was no evidence of any phone logs of Petitioner in relation to the conspiracy.  (Dkt. # 475, Trial Tr. Vol. VII at 1562).

5.   That there was no evidence that Petitioner was selling drugs or participating in the conspiracy between January 1, 2002, and August 10, 2002.  (Dkt. # 475, Trial Tr. Vol. VII at 1562).

31

6.      That from the fall of 2003 to the date of Agent Lucas' testimony, it would have been impossible for Petitioner to have been selling drugs.  (Dkt. # 475, Trial Tr. Vol. VII at 1562).

7.      That during his post-arrest statement, Michael Morris never mentioned Petitioner.  (Dkt. # 475, Trial Tr. Vol. VII at 1565-66).

8.      That there was some mention of Petitioner in Agent Lucas' report on Andre Collier.[10]  (Dkt. # 475, Trial Tr. Vol. VII at 1567).

9.      That during his April 21, 2003, meeting with Agent Lucas, Rahsaan Felix did not mention Petitioner.  (Dkt. # 475, Trial Tr. Vol. VII at 1569).

10.     That codefendant David Anderson did not mention Petitioner during his proffer.  (Dkt. # 475, Trial Tr. Vol. VII at 1571).

11.     That codefendant Ralph Jones stated during his February 13, 2004, proffer that he bought small amounts of marijuana from Petitioner.  (Dkt. # 475, Trial Tr. Vol. VII at 1571).

12.     That, in summary, there were a number of individuals who did not mention Petitioner during their proffers.  (Dkt. # 475, Trial Tr. Vol. VII at 1572).

13.     That Agent Lucas had no recorded phone conversations involving Petitioner.  (Dkt. # 475, Trial Tr. Vol. VII at 1578).

---

[10]     At the direction of counsel, Agent Lucas did not give details about the reference to Petitioner in the Collier report.  (Dkt. # 475, Trial Tr. Vol. VII at 1562).

14.    That Agent Lucas could have recorded, without a Court order, any

phone conversation between a confidential informant and Petitioner.

(Dkt. # 475, Trial Tr. Vol. VII at 1579).

Finally, on redirect examination, Agent Lucas gave the following testimony with

respect to Petitioner:

1.    That it was not impossible for Petitioner to have participated in the

charged conspiracy from August 11, 2002, to December 2003.  (Dkt.

# 475, Trial Tr. Vol. VII at 1600).

2.    That Petitioner was apprehended with drugs on two separate

occasions between August 11, 2002, and December 2003.[11]  (Dkt. #

475, Trial Tr. Vol. VII at 1601).

3.    That Agent Lucas recalled Stephon Davis testifying earlier in the

trial that Davis never had any dealings with Petitioner, and that such

testimony was not inconsistent with Davis' proffer.  (Dkt. # 475,

Trial Tr. Vol. VII at 1602).

4.    That Government Exhibits 6 and 7 were not submitted for

fingerprinting because they were taken directly from Petitioner. [12] [13]

(Dkt. # 475, Trial Tr. Vol. VII at 1603).

Based on the limited scope and prejudice of Agent Lucas' testimony with respect

to Petitioner, and taking into account the significant evidence of Petitioner's guilt

---

[11]    The details of each arrest were provided elsewhere at trial by other witnesses.
[12]    Exhibits 6 and 7 were identified earlier at trial as two cellular phones allegedly seized from Petitioner's car after inventory on March 18, 2003.
[13]    Upon objection by Petitioner's counsel, this testimony was stricken.

provided by other witnesses, the Court finds that Petitioner cannot show the prejudice required to succeed on the instant <u>Brady</u> claim.  Specifically, Petitioner cannot show that, even if the Government had disclosed information affecting the credibility of Agent Lucas' testimony, there is a reasonable probability that there would have been a different result in the proceedings.

Therefore, Petitioner's <u>Brady</u> claim, adopted from the petition of codefendant Fred Cloud, fails.

### F. Petitioner's Additional Pending Motions

Plaintiff has filed several additional motions related to the instant petition.  First, Petitioner filed a Motion to Bar Government's Answer for Failure to Comply with Court Order, arguing that the Government's response to the petition should be stricken because it exceeded the page limitation prescribed by the Court.  (Dkt. # 543).  The Government subsequently filed a Motion to Exceed Page Limitation, which the Court granted.  (Dkt. # 544).  Therefore, Petitioner's Motion to Bar Government's Answer is hereby **DENIED as MOOT**.  (Dkt. # 543).

Additionally, Petitioner filed a Motion for Designation of Magistrate Judge, requesting that the Court refer the instant petition to a Magistrate Judge for resolution. (Dkt. # 559).  Under Local Rule 72.2, the Court finds that referral to a Magistrate Judge is inappropriate in cases involving petitions under 28 U.S.C. § 2255.  Therefore, Petitioner's Motion for Designation of Magistrate Jude is hereby **DENIED**.  (Dkt. # 559).

Finally, Petitioner has filed a Motion to Obtain Transcript, requesting transcripts from the closing argument portion of Petitioner's trial.  (Dkt. # 566).   Petitioner has not

filed a motion for a waiver of fees related to obtaining transcripts. No court order is required to permit a petitioner to obtain transcripts of proceedings, though applicable fees may apply and must be paid by the petitioner in the absence of a motion for fee waiver. See 28 U.S.C. § 753(f). Therefore, Petitioner's Motion to Obtain Transcripts is **DENIED**. (Dkt. # 566).

To the extent that Petitioner seeks to rely upon his previously filed Application to Proceed without Prepayment of Fees (Dkt. # 514) in order to obtain the requested transcripts without payment of applicable fees, Petitioner's Motion to Obtain Transcripts is **DENIED**. (Dkt. # 566). The waiver of fees for transcripts in the § 2255 petition context is governed by 28 U.S.C. § 753(f). According to § 753(f), a petitioner proceeding in forma pauperis under § 2255, may obtain a sentencing transcript if, upon motion, the Court determines that (1) petitioner's claims are not frivolous, and (2) the sentencing transcript is needed to decide the issues presented in the § 2255 petition.[14]  See 28 U.S.C. § 753(f) (2006); U.S. v. MacCollom, 426 U.S. 317 (1976) (holding that the stated preconditions – "non-frivolous" and "necessary" – do not offend due process). Petitioner's lack of in forma pauperis status aside,[15] Petitioner has failed to show that his

---

[14]     Section 753 provides,

> Fees for transcripts furnished in proceedings brought under section 2255 of this title [28 U.S.C. § 2255] to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose *if the trial judge or a circuit judge certifies that the suit or appeal[] is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal.*

28 U.S.C. § 753(f) (2006) (emphasis added).

[15]     There is no fee required to file a § 2255 habeas petition. Thus, Petitioner's ability to proceed in forma pauperis is relevant only as a precondition to any request for a free sentencing transcript under 28 U.S.C. § 753.

claims are not frivolous or that the requested transcripts are necessary to decide the issues raised in the instant petition.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody is hereby **DISMISSED**. (Dkt. # 513).  Petitioner's Motion to Amend or to Supplement His § 2255 Motion or In the Alternative to Incorporate <u>Brady</u> Argument of Codefendant Fred Cloud is hereby **GRANTED** in the alternative.  (Dkt. # 565).

Additionally, Petitioner's Motion to Bar Government's Answer is hereby **DENIED as MOOT**.  (Dkt. # 543).  Petitioner's Motion for Designation of Magistrate Jude is hereby **DENIED**.  (Dkt. # 559).  Petitioner's Motion to Obtain Transcript is hereby **DENIED**.  (Dkt. # 566).

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed.R.App.P. 22(b).

**IT IS SO ORDERED.**

<u>**/s/ Peter C. Economus – February 9, 2009**</u>
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**